# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **PAMELA ANN GILBERT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 3:13-cv-0130** |
| **v.** ) | **Judge Nixon / Knowles** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Insurance ("SSI"), as provided under Title XVI of the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13. Plaintiff has filed a Reply. Docket No. 14-1.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for SSI on October 6, 2009, with a protective filing date

oalleging that she had been disabled since September 30, 2008, due to depression, hepatitis C, diabetes, arthritis, asthma, acid reflux, and high blood pressure. *See, e.g.*, Docket No. 10, Attachment ("TR"), pp. 52, 53, 118, 139. Plaintiff's application was denied both initially (TR 52) and upon reconsideration (TR 53). Plaintiff subsequently requested (TR 66) and received (TR 86) a hearing. Plaintiff's hearing was conducted on September 29, 2011, by Administrative Law Judge ("ALJ") Donald E. Garrison. TR 28-51. Plaintiff and Vocational Expert, Rebecca Williams, appeared and testified. *Id.*

On October 31, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 11-23. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since September 11, 2009, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: Degenerative joint disease of the right knee, asthma, obesity, diabetes mellitus, degenerative disc disease of the lumbar spine, and bipolar disorder. (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to walking or standing 20 minutes at a time and limited to two hours each of standing or walking; sitting two hours at a time; no climbing of ladders, ropes or scaffolds; only occasional kneeling, crouching, and crawling; frequent climbing stairs and ramps, balancing, and stooping; frequent operating a

motor vehicle, humidity and wetness, exposure to dust, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat; occasional contact with the public; and understanding, remembering, and carrying out short and simple instructions and making judgments on simple work-related decisions.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on August 30, 1977 and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant is illiterate and is able to communicate in English (20 CFR 416.964).

8       Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since September 11, 2009, the date the application was filed (20 CFR 416.920(g)).

TR 16-22.

On December 26, 2011, Plaintiff timely filed a request for review of the hearing decision.

TR 7.  On January 10, 2013, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) finding that Plaintiff retained the residual functional capacity to perform the full range of light work; (2) minimizing Plaintiff's mental impairments; (3) failing to classify Plaintiff's major depressive disorder, degenerative joint disease, degenerative disc disease, asthma, hypertension, hepatitis C, and anemia as severe impairments and not providing adequate reasoning as to why those conditions were not considered to be severe; and (4) improperly evaluating Plaintiff's credibility. Docket No. 12-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Residual Functional Capacity ("RFC")

Plaintiff first argues that the ALJ erred in his determination of her RFC by assigning her an RFC of light work, because he found her to be "limited to walking or standing 20 minutes at a time and limited to 2 hours each of standing or walking and sitting two hours at a time," which inherently precludes her from being able to perform light work as it is defined. Docket No. 12-1, p. 7, *referencing* TR 18. Plaintiff also argues that, when determining her RFC, the ALJ improperly minimized her right knee osteoarthritis, diabetes mellitus, and chronic orthopedic impairments. *Id.* at 7-8. Plaintiff additionally argues that, when determining her RFC, the ALJ improperly accorded significant weight to the report of consultative examiner Woodrow Wilson, M.D. *Id.* at 8. Plaintiff contends that since Dr. Wilson was not a treating physician and his consultative examination report was "not consistent with the objective medical evidence," the ALJ should not have accorded his report significant weight. *Id.*

Defendant responds that Plaintiff's argument that the ALJ found that she retained the residual functional capacity to perform the full range of light work is "factually incorrect," as the ALJ did not find that Plaintiff could perform the full range of light work, but rather, only a limited subset of light work that did not require her to exceed her physical limitations. Docket

No. 13, p. 9.  Defendant notes that the ALJ actually found that Plaintiff could do light work

"*except* she is limited to walking or standing 20 minutes at a time and limited to two hours each

of standing or walking; sitting two hours at a time; no climbing of ladders, ropes or scaffolds;

only occasional kneeling, crouching, and crawling; frequent climbing stairs and ramps,

balancing, and stooping; frequent operating a motor vehicle, humidity and wetness, exposure to

dust, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat . . . ."  *Id.*, *quoting*

TR 18 (italics original).  Defendant also notes that Plaintiff's citation of SSR 83-10 to support

her argument is misplaced, as SSR 83-10 concerns the application of the Medical-Vocational

Guidelines, which is inapplicable since the ALJ relied on a VE, not the Medical-Vocational

Guidelines.  *Id.*  Defendant further responds that: (1) the ALJ's RFC determination was properly

based on substantial evidence; (2) the ALJ expressly relied upon the opinions of Drs. Wilson and

Gregory; (3) Dr. Allison concurred with Dr. Gregory, thereby adding further support to the ALJ's

finding; (4) Dr. Wilson's findings were consistent with the opinions of Drs. Gregory and Allison;

and (5) the medical opinions of Drs. Wilson, Gregory, and Allison constitute substantial evidence

supporting the ALJ's finding.  *Id.* at 9-10.  Defendant notes that Plaintiff has not identified any

medical opinion supporting her alleged disability and/or her assertion of error.  *Id.* at 10.

Plaintiff replies that, although Defendant is correct that the ALJ limited her work to a

subset of light work, the ALJ's RFC determination was, nevertheless, "overly optimistic"

considering the severity of her impairments.  Docket No. 14-1 at 2.  With regard to Defendant's

assertions that the ALJ properly relied upon the opinions of Drs. Wilson and Gregory, and that

Plaintiff failed to identify any medical opinion that supports her allegations, Plaintiff argues that

she "should not be prejudiced due to any failure of obtaining a Medical Source Statement,"

because "[t]here are numerous physicians whose policy prohibits the completion of such statements." *Id*. Plaintiff contends that the "evidence as a whole would show a combination of severe impairments such that [she] would be incapable of the RFC given by the ALJ or even a sedentary RFC." *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

While Plaintiff contends that the "evidence as a whole would show a combination of severe impairments such that [she] would be incapable of the RFC given by the ALJ" (Docket No. 14-1 at 2), the record contains physician evaluations, medical assessments, and test results that were properly considered by the ALJ when determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." For example, the ALJ discussed Plaintiff's medical records as follows:

> The medical record indicates the claimant was diagnosed with Hepatitis C in 2001. The record indicates that hepatitis C has

precipitated an associated splenomegally [*sic*] (Ex. 9F, p 14) as well as elevated liver enzymes. Both the medical record and the claimant's testimony indicate that the Hepatitis C and associated splenomegaly do not significantly limit her ability to perform basic work activities.

The medical record also indicates the claimant has had thrombocytopenia on occasion with platelet counts of 72, 89, and 135 ((Ex 17F, p1)(Ex. 10F,p16)(Ex14F,p16)). Other submitted platelet counts are within normal range ((Ex 9F, p13)(Ex. 10F, p21)). Records do not indicate specific treatment for thrombocytopenia and the undersigned finds that it does not significantly limit her ability to perform basic work activities.

The medical record indicates that the claimant has hypertension as well. There is nothing in the record that indicates any complications due to hypertension or related heart problems.

The medical record further indicates an iron deficient anemia. The record indicates Hgb levels of between 10.0 and 12.4 with normal stated ranges of between 11.5 and 15 ((Ex. 2F, p13) (Ex. 17F, p1) (Ex.9F, p13) (Ex.14F, p19)). Records do not indicate specific treatment for iron deficient anemia and the undersigned finds that the claimant's hepatitis C, thrombocytopenia, and anemia are not severe.

. . .

The medical record and testimony shows that the claimant was diagnosed with asthma and carries and uses an Albuterol inhaler. She testified that the inhaler helps some, but she has chronic bronchitis. She is unaware of any pulmonary function studies and has never been to the emergency room or hospitalized for asthma related complications. Therefore, the limitations in the residual functional capacity are considered appropriate for this impairment.

The claimant complains that the two daily shots of insulin for diabetes mellitus limit her ability such that she "can't hardly do nothing" (sic). However, the medical record does not indicate any side effects from taking insulin shots. The claimant also testified that she has not been fully compliant in attempting to control the

diabetes mellitus, at least occasionally eating candy by the handful (Ex. 16F,p37). The claimant further reports that all her medications cause chronic drowsiness. The claimant testified that her blood sugar is frequently high, sometimes as high as 500 and this causes drowsiness as well. There is no reported end organ damage in the record as a complication of diabetes mellitus. The claimant complains of chronic knee and back pain. The claimant also claims that she cannot take pain medication because her platelets are low and she cannot afford to fill the prescriptions. The medical record does not support these claims or that the claimant has asked to change medications to avoid side effects.

. . .

. . . The claimant claims that her knees buckle frequently due to degenerative joint disease of the right knee. While the claimant has sought treatment in the emergency room for knee and back pain, the August 2010 x-ray confirms only mild patellar osteoarthritic change (ex. 14F, 18). The claimant did not submit any diagnostic imaging reports on her back. In fact, the claimant also reported that she was not seeking treatment to correct her alleged knee pain (Ex. 16F, p37.). The claimant reported that she had no back pain in February 2010 (Ex. 9f, p8).

TR 16-17, 19-20, *citing* TR 242, 291, 296, 297, 314, 319, 344, 346, 347, 400, 406.

With regard to the opinions of Drs. Wilson and Gregory, the ALJ discussed their findings as follows:

The undersigned gives significant weight to the opinion of Woodrow Wilson, M.D. insofar as it is consistent with the above residual functional capacity with regard to lifting/carrying. His consultative assessment indicated that the claimant is limited to 20 minutes of walking or standing at one time and up to two hours each per 8 hour work day, can lift up to 20 pounds frequently and 50 pounds occasionally, and is only limited to working in environments not involving ladders or scaffolds. Other limitations that Dr. Wilson stated were only occasional kneeling, crouching, and crawling; frequent stairs ramps, balancing, and stooping; and frequent operating a motor vehicle, humidity and wetness, exposure to dust, odors, fumes, and pulmonary irritants, extreme

cold, and extreme heat (ex. 6F). The undersigned also gives significant weight to the opinion by Dr. James P. Gregory MD (the non-examining State agency consultant). This was largely identical with the exception that the claimant should avoid concentrated exposure to fumes (ex. 8F).

TR 20, *citing* TR 265-70, 275-83.

As evidenced in the quoted passages above, when determining Plaintiff's RFC, the ALJ discussed Plaintiff's reports and medical records concerning, *inter alia*, her hepatitis C, thrombocytopenia, hypertension, anemia, asthma and chronic bronchitis, diabetes mellitus and insulin use, degenerative joint disease, knee pain, and back pain. Along with his discussion of Plaintiff's subjective reports and those medical records, the ALJ also discussed Plaintiff's medications, their reported side effects, etc. Moreover, with regard to the ALJ's discussion of the opinions of Drs. Wilson and Gregory, the ALJ expressly stated that Dr. Wilson's opinion was consistent with Plaintiff's assigned RFC, and that Dr. Gregory's opinion was consistent with that of Dr. Wilson.

The ALJ evaluated all of the objective medical evidence of record, as well as Plaintiff's subjective complaints and reported level of activity, and determined that Plaintiff retained the RFC to perform "light work . . . except she is limited to walking or standing 20 minutes at a time and limited to two hours each of standing or walking; sitting two hours at a time; no climbing of ladders, ropes or scaffolds; only occasional kneeling, crouching, and crawling . . . ." TR 18 (emphasis removed). The ALJ's RFC determination was supported by substantial evidence, and the ALJ appropriately articulated his analysis of the objective and testimonial evidence of record; therefore, the ALJ properly evaluated the evidence in reaching this RFC determination, and

Plaintiff's argument fails.

As to Plaintiff's assertion that she should not be prejudiced for her failure to provide a medical source statement, there is no evidence in the record that her failure to provide such a statement prejudiced her. In fact, the ALJ simply stated, "as there are no treating physicians that indicate a finding of disability, the residual functional capacity is supported by the opinions of Drs. Wilson, Gregory, and Curry, the medical evidence, and the record as a whole." TR 21. The ALJ's referenced statement merely indicates that he found the opinions of the cited doctors and the medical records to be more compelling, given their consistency with each other and with the evidence of record, and absent a contradictory opinion from Plaintiff's treating source. Because there is substantial evidence in the record to support the ALJ's RFC determination, the ALJ's determination stands.

## 2. Plaintiff's Mental Impairments

Plaintiff maintains that the ALJ failed to consider the "debilitating effects" of her "major depressive disorder, recurrent" on her ability to work. Docket No. 12-1 at 8. Plaintiff also argues that the ALJ "minimized [her] severe mental impairments and failed to include major depressive disorder, recurrent as a severe impairment and erred by not stating why he did not find it to be a severe impairment." *Id.* at 9.

Defendant responds that the ALJ properly considered the evidence of record and notes that the ALJ's decision was supported by substantial evidence. Docket No. 13. Specifically, Defendant argues that the ALJ's decision regarding Plaintiff's mental impairments/limitations was supported by the opinions of Dr. Curry and Nurse Burke, and Defendant notes that the

opinion of Dr. Sachs was likewise in concurrence. *Id.* At 12-13. Defendant also responds that

Plaintiff's statement of error "merely recounts portions of the medical evidence and of her own

claims of subjectively disabling symptoms"; "she does not identify any medical opinions of

disabling functional limitations or any evidence that the ALJ erred." *Id.* at 13. With regard to

Plaintiff's subjective allegations, Defendant responds that the ALJ was not bound to accept her

allegations because the ALJ found Plaintiff's allegations to be inconsistent with the evidence and

her reported daily activities, and therefore, to be less than fully credible. *Id.* at 15, *citing* TR 19-

20.

Plaintiff replies that there is evidence to support her mental limitations. Docket No. 14-1.

Specifically, she notes that she had Global Functional Assessment scores of 45, and that she

reported her subjective complaints to her treating providers "for treating purposes only and not

for purposes of a social security hearing." *Id.*

The ALJ found that Plaintiff's mental impairments were not of listing level severity, and

ultimately determined that she was capable of "occasional contact with the public; and

understanding, remembering, and carrying out short and simple instructions and making

judgments on simple work-related decisions." TR 17, 18. In so doing, the ALJ discussed

Plaintiff's mental health as follows:

> In terms of the claimant's alleged bi-polar disorder, medical reports
> and the claimant's testimony reveal that there was a remote suicide
> attempt in 2007, yet there have been no suicidal ideations indicated
> in the medical record for a substantial period since then. The
> claimant testified that she is taking Paxil and Trazodone for
> depression and insomnia but the claimant's history of psychiatric
> treatment includes several missed and canceled appointments and
> lack of compliance with prescription medications (ex 1F, 16F).

The claimant has gone for long periods without seeing her mental healthcare provider (ex. 1F, 16F).  In November 2009, the claimant indicated that "the way her mother treated her has led to her not being able to work" (ex. 3F, p2).

. . .

Dorothy Burke, APRN., completed a Clinically Related Group evaluation (CRG) that the claimant is in group 1 as a "person with severe and persistent mental illness."  At that time, Ms. Burke had not seen the claimant in quite some time as the claimant had missed and canceled several appointments and was not in compliance with medication (Ex. 16F).  When the claimant was back in compliance with medication and therapy, Ms. Burke stated that there was no mental health reason for this claimant not to be able to work. (Ex. 16F, p38).  Though Ms. Burke is not an acceptable medical opinion according to Social Security Ruling 06-3p, her opinion (at Ex. 16F, p38) is not inconsistent with the medical evidence.

The claimant had a GAF score of exactly 45 nine times since April of 2009 (ex. 16F).  The undersigned finds that this does not suggest an entirely objective opinion since the scores do not reflect the positive and negative developments in between assessments.  In fact, the medical record reflects changes in the claimant that would be expected to change an objective GAF score for the better or worse. Furthermore, the GAF score is an un-standardized hypothetical continuum of health.  Effectively, it is a snapshot of the instant that a claimant comes to seek medical attention and not indicative of other times.  Therefore, the undersigned gives little weight to the GAF score from Ms. Burke.

Dr. Mason D. Curry, Ph.D. (the State agency consultant) completed a mental residual functional capacity assessment.  The undersigned gives significant weight to his opinion as well.  Dr. Curry indicates that the claimant has the ability to understand and remember simple and detailed instructions, the claimant has the ability to maintain attention and concentration for periods of at least 2 hours, the claimant has the ability to relate appropriately to the public, peers, and supervisors, the claimant can adapt to infrequent change, and is consistent with medical evidence.

TR 20-21, *citing* TR 183-229, 246, 261-64, 364-405.

The ALJ also discussed the effect of Plaintiff's mental impairments on her daily activities as follows:

> In activities of daily living, the claimant has mild restriction. The claimant has indicated that she is able to wash dishes and wash clothes. She states that she would be willing to do other housework if she knew how. She states that she goes outside daily and is able to walk, ride in a car, or use public transportation to get around. She is able to shop three hours at a time. Additionally, the clamant indicates that these hobbies have not changed since the alleged disability began (Ex. 4).

> In social functioning, the claimant has moderate difficulties. The claimant attends church regularly and she claims that she gets along with family friends and neighbors (Ex. 4E). Medical records indicate that she is "social and out in the community" (Ex. 16F, p. 31). However, the claimant has indicated that she stays inside the home most of the time and cries. She also stated that she has contemplated suicide (Testimony). The record shows that the claimant has had an attempted overdose more than a year prior to the alleged onset date of disability, but the claimant has shown no indications of suicidal ideations since then (Ex. 1F).

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant states that she can pay attention "ok," but cannot follow written or spoken instructions well. She also states that she is not proficient in county money and she does not handle change or stress well. The claimant has also indicated that she does need help remembering certain appointments as well as handling her finances (Ex. 4E).

> . . .

> The claimant also complains that depression and/or other mental deficiencies cause her to remain in her home and frequently cry most of the day. However, the claimant indicated that she has a range of daily activities consisting of swimming, housework, watching television, shopping, and going to church [*sic*]

TR 17-19, *referencing* TR 41, 151-58, 183-229, 364-405.

As can be seen, the ALJ discussed Plaintiff's medical records, including treatment notes

from Volunteer Behavior Health Care System (TR 183-229, 364-405), relating to her depression

and overall mental health treatment, as well as Plaintiff's subjective complaints regarding her

mental limitations and their effects on her daily life, demonstrating that he considered the impact

and severity of her mental impairments. TR 17-21.

Despite Plaintiff's contention that her GAF scores indicated that her mental limitations

were severe, as can be seen in the quoted passages above, the ALJ clearly articulated why he did

not find Plaintiff's GAF scores to be compelling evidence regarding the severity of her mental

impairments. TR 21. Moreover, GAF scores are not determinative of disability for Social

Security purposes. In fact, the Social Security Administration has declined to endorse the GAF

scale for "use in the Social Security and SSI disability programs," and has indicated that GAF

scores have no "direct correlation to the severity requirements in [the] mental disorders listings."

Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.

Reg. 50746-01 (August 21, 2000). Although "the GAF is a test used by mental health

practitioners with respect to planning treatment and tracking the clinical progress of an individual

in global terms, the ALJ is not bound to consider its results at the exclusion of other medically

reliable evidence." *Alvarez v. Barhart*, 2002 WL 31466411, at *8 (W.D. Tex. Oct. 2, 2002).

Nor is a GAF score determinative of an individual's RFC assessment. *Id.* ("A GAF score is not a

rating typically relied upon with respect to assessing an individual's RFC under the Act."); *see

also Howard v. Commissioner*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score is not essential in

assessing RFC). Accordingly, Plaintiff's contention that her GAF scores constitute substantial

evidence supporting the severity of her mental impairments is unavailing.

The ALJ assessed the objective and testimonial evidence of record and reached a reasoned decision; he articulated the basis for that decision; and his decision was supported by substantial evidence; Plaintiff's contention regarding the ALJ's evaluation of her mental impairments fails.

### 3. Severity of Impairments

Plaintiff argues that the ALJ did not appropriately evaluate the severity of all of her impairments. Docket No. 12-1 at 9. Specifically, Plaintiff argues that the ALJ minimized the severity of her chronic orthopedic impairments and also failed to recognize as severe her diagnoses of asthma, hypertension, hepatitis C, and anemia. *Id.* Plaintiff also argues that the ALJ failed to provide sufficient reasons for not finding them to be severe. *Id*.

Defendant generally responds that the ALJ discussed Plaintiff's diagnoses and her subjective complaints, the evidence relating to each, the effects on Plaintiff's daily activities, and properly evaluated her impairments. Docket No. 13, *passim*. Defendant further responds that "Plaintiff misapprehends the purpose of the severity requirement," as the severity requirement "is a screening devise to dispose of groundless claims." *Id.* at 13, *citing Bowen v. Yuckert*, 482 U.S. 137, 141; 20 CFR § 416.921. Defendant notes that the severity requirement is a threshold requirement which Plaintiff passed. *Id.*, at 13-14. Defendant contends that because the ALJ determined that Plaintiff did have some severe impairments (and therefore continued on to the next step in the sequential evaluation process), the ALJ's determination that Plaintiff's asthma, hypertension, hepatitis C and anemia were nonsevere is "immaterial." *Id.* Defendant notes after

finding that Plaintiff satisfied the severity requirement and proceeding with the sequential

disability analysis, the ALJ considered all of the functional limitations established by reliable

evidence, not just the ones he identified as severe. *Id.* at 14. Defendant summarizes:

> In sum, Plaintiff's argument concerning the severity requirement is
> moot because she satisfied that requirement. To the extent that
> Plaintiff intends to argue that certain of her impairments were
> disabling and were improperly assessed by the ALJ, Plaintiff failed
> to carry her administrative burden of proving such disabling
> limitations and failed to show that the ALJ's assessment of her
> functional limitations was unsupported by substantial evidence.
> Again, Plaintiff cannot fault the ALJ for her own lack of evidence.

*Id.* at 14-15.

While Plaintiff does not specifically address this statement of error in her Reply, she does

note that: "The evidence as a whole would show a combination of severe impairments such that

the claimant would be incapable of the RFC given by the ALJ or even a sedentary RFC." Docket

No. 14-1, p. 2.

As an initial matter, when an ALJ finds that a claimant has at least one severe impairment

and proceeds to complete the sequential evaluation process, the ALJ's failure to find that another

condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Secretary*, 837

F.2d 240, 244. Consequently, when an ALJ finds that a claimant has at least one severe

impairment and proceeds to complete the sequential evaluation process, the ALJ's failure to

explain why he did not find other impairments to be severe likewise cannot constitute reversible

error.

The ALJ in the case at bar expressly found that Plaintiff had the following severe

impairments: degenerative joint disease of the right knee, asthma, obesity, diabetes mellitus, degenerative disc disease of the lumbar spine, and bipolar disorder.  TR 16.  Because the ALJ found that Plaintiff did have severe impairments and continued on with the sequential evaluation process, Plaintiff's argument on this point fails.

## 4. Credibility of Subjective Complaints

Plaintiff contends that the ALJ violated SSR 96-7p because he did not specifically state whether or not he found her testimony to be credible, and did not specifically state the amount of weight he assigned to her testimony.  Docket No. 12-1 at 9-11.  Plaintiff argues that "the ALJ merely stated that he used the criteria outlined in SSR 96-7p in reaching his decision, rather than specifically stating the weight he gave to the claimant's statements and the reasons for that weight. . . ."  *Id.* at 10.  Plaintiff also contends that the ALJ erred in detracting from her credibility "based on the fact that she has been able to perform some activity on a very minimal basis."  *Id.* at 11.  Plaintiff argues, "By focusing on these few activities of daily living, the ALJ ignored the medical evidence which shows that the Plaintiff is disabled."  *Id.*

Defendant responds that, contrary to Plaintiff's assertion, the ALJ specifically found that Plaintiff's allegations of disabling symptoms were "not credible."  Docket No. 13 at 17, *quoting* TR 19.  Defendant also responds that "the ALJ gave multiple, specific reasons to support his credibility finding," including, *inter alia*, the fact that Plaintiff's allegations of disabling symptoms were inconsistent with, and unsupported by, the medical evidence, her reported daily activities, and statements she made.  *Id.* at 15-16, *citing* TR 18-20.  Defendant further responds that the ALJ also discussed the fact that Plaintiff had missed or cancelled many therapy

appointments and had been non-compliant with her medication. *Id.* at 16. Defendant contends

that the ALJ did not simply discount Plaintiff's credibility in a conclusory manner, but rather, he

based his findings on numerous reasons, each of which he articulated in his decision. *Id.* at 15-

19. Defendant maintains that the reasons proffered by the ALJ in his discounting of Plaintiff's

credibility were proper considerations; that the ALJ appropriately explained his credibility

findings; and that his credibility determination was supported by substantial evidence. *Id.*

Plaintiff does not specifically address this statement of error in her Reply. *See* Docket

No. 14-1.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective

allegations:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other.").

When analyzing the claimant's subjective complaints, the ALJ must also consider the

following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's symptoms; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve disabling symptoms. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the instant action determined:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. *Most specifically, the objective medical evidence does not support them. They are also inconsistent with her daily activities.* The record as a while does not indicate that the claimant has had any combination of impairments that has made the claimant unable to work for any period of twelve consecutive months.

TR 19-20 (Emphasis added).

Specifically, the ALJ explained:

> The medical record and testimony shows that the claimant was diagnosed with asthma and carries and uses an Albuterol inhaler.

She testified that the inhaler helps some, but she has chronic bronchitis. She is unaware of any pulmonary function studies and has never been to the emergency room or hospitalized for asthma related complications. . . .

The claimant complains that the two daily shots of insulin for diabetes mellitus limit her ability such that she "can't hardly do nothing" (sic). However, the medical record does not indicate any side effects from taking insulin shots. The claimant also testified that she has not been fully compliant in attempting to control the diabetes mellitus, at least occasionally eating candy by the handful (Ex. 16F,p37). The claimant further reports that all her medications cause chronic drowsiness. The claimant testified that her blood sugar is frequently high, sometimes as high as 500 and this causes drowsiness as well. There is no reported end organ damage in the record as a complication of diabetes mellitus. The claimant complains of chronic knee and back pain. The claimant also claims that she cannot take pain medication because her platelets are low and she cannot afford to fill the prescriptions. The medical record does not support these claims or that the claimant has asked to change medications to avoid side effects.

The claimant also complains that depression and/or other mental deficiencies cause her to remain in her home and frequently cry most of the day. However, the claimant indicated that she has a range of daily activities consisting of swimming, housework, watching television, shopping, and going to church [*sic*]

. . .

The claimant testified that she is unable do [*sic*] housework and relies on her roommate to do much of it. However, as recently as November 22, 2010, she has been helping to care for at least one child (ex. 16F, pp 10, 33). The claimant also indicated that she does do housework (Ex. 16F, p27). The claimant claims that her knees buckle frequently due to degenerative joint disease of the right knee. While the claimant has sought treatment in the emergency room for knee and back pain, the August 2010 x-ray confirms only a mild patellar osteoarthritic change (ex. 14F, 18). The claimant did not submit any diagnostic imaging reports on her back. In fact, the claimant also reported that she was not seeking

24

treatment to correct her alleged knee pain (Ex. 16F, p37.). The claimant reported that she had no back pain in February 2010 (Ex. 9f, p8).

In terms of the claimant's alleged bi-polar disorder, medical reports and the claimant's testimony reveal that there was a remote suicide attempt in 2007, yet there have been no suicidal ideations indicated in the medical record for a substantial period since then. The claimant testified that she is taking Paxil and Trazodone for depression and insomnia but the claimant's history of psychiatric treatment includes several missed and canceled appointments and lack of compliance with prescription medications (ex. 1F, 16F). The claimant has gone for long periods without seeing her mental heathcare provider (ex. 1F, 16F). In November 2009, the claimant indicated that "the way her mother treated her has led to her not being able to work" (ex. 3F, p2).

*Id.*, *citing* TR 183-229, 245-46, 291, 329-47, 364-405.

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. *Id.* It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. Plaintiff's argument that the ALJ inappropriately relied solely on Plaintiff's daily activities and "ignored the medical evidence," is, therefore, unavailing. Docket No. 12-1 at 11.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and

credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of

service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


E. CLIFTON KNOWLES
United States Magistrate Judge